# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

***

SHERRIE JOHNSON,

               Plaintiff,

vs.

CLARK COUNTY SCHOOL DISTRICT,

               Defendant.

2:14-cv-02213-JAD-VCF
**ORDER AND REPORT AND
RECOMMENDATION**

This matter involves *pro se* Plaintiff Sherrie Johnson's employment discrimination action against Defendant Clark County School District. Before the court are Plaintiff's Amended Complaint (#7[1]), Motion to Extend Time (#5), and Motion to Seal (#9). For the reasons stated below, it is recommended that Plaintiff's race discrimination and disability discrimination claims be dismissed with prejudice and the Amended Complaint (#7) be stricken. It is ordered that Plaintiff's Motions to Extend Time (#5) and Seal (#9) is denied. If this Report and Recommendation is adopted, this case will proceed on Plaintiff's retaliation, age discrimination, and religious discrimination claims as alleged in the original Complaint. (#4).

## BACKGROUND

### I.    Factual Background

Plaintiff started working as a secretary for Defendant Clark County School District on May 11, 2004. (#4 at 3). The employment relationship seems to have been amicable until sometime in 2011. Principal Boyle commended Plaintiff in March 2011 for "professional[ism] and dedication to remain

---

[1] Parenthetical citations refer to the court's docket.

1

focused on student achievement." (#4 at 15). Plaintiff was also "surplused into the position of Dean's Secretary" in March 2011 due to her seniority, with the transfer to take effect in August.

In March 2011, Plaintiff alleges she began to have abusive meetings with management. (#4 at 15). Plaintiff states she was being set up to fail because management wanted Alma Baghy, who formerly held the position, to be reinstated. Alma Baghy's was approximately 34 years old in 2011, when Plaintiff was 52 years old.

Plaintiff filed a complaint with the National Labor Relations Board in October 2011. (#4 at 16). She also filed a Charge of Discrimination with the Nevada Equal Rights Commission for discrimination based on race, age, disability, religion, and retaliation on April 16, 2012. (#4 at 15-16). In this April 2012 Charge of Discrimination, Plaintiff references a prior EEOC filing she made by stating, "Since filing my charge with the EEOC, I have been retaliated against." (#4 at 16). She lists instances of retaliation spanning from January 12, 2012 to March 27, 2012. These include being suspended, forced to attend Investigatory Reviews, and written up.

Plaintiff also alleges that in October, 2013, once she received the EEOC's right to sue letter from the April 2012 charge, she was "called back to work after being off from work for close to two years." (#4 at 6). She was told it would be two weeks before she could start work. She did not actually return to work until December 6, 2013. She received "very small" paychecks starting in December, and did not receive some training that was promised to her. She was also sent to work miles away. Co-workers commented that this treatment was coming from higher up. They said that Dean Martwick "knew all the top district people with power." Plaintiff states Principal Boyle contacted her current principal, Mr. Day, about her previous EEOC filing on January 3, 2014, at which point she was targeted for termination. Meanwhile, Dean Martwick also allegedly targeted the Plaintiff by speaking rudely and only letting Plaintiff work for her instead of all three Deans, which was typical for the office secretary. (#4 at 14).

2

Plaintiff's complaint also contains general allegations of discriminatory behavior. Plaintiff alleges that Dean Wynn Randall, Principal Shawn Boyle, Principal Trent Day, and Dean Danielle Martwick acted superior to her and engaged in "psychological warfare." (#4 at 4). They allegedly made inappropriate comments to her and about her behind closed doors, such as calling her "illiterate, stupid, and dumb." She faced abusive meetings every day when she would be brought down in front of other employees and told it would not stop "until I go somewhere and die." (#4 at 6). They allegedly used abusive body language in front of her. Plaintiff was told by a manager's secretary that she was "too religious." On one occasion, Dean Wynn Randall allegedly screamed at and threatened her at 6 a.m. because of a meeting later that day where Plaintiff would be testifying to "the board" about her treatment. (#4 at 4).

Plaintiff was terminated on February 11, 2014. (#4 at 6). She was handed a piece of paper and told to leave in less than 30 minutes. This allegedly occurred immediately after the right to sue letter she received from the EEOC in October 2013 expired. That day, Plaintiff requested that the Faculty Review Committee review "the unfavorable action" of Defendant. (#4 at 3). Plaintiff filed a Charge of Discrimination for retaliation with the Nevada Equal Rights Commission on March 17, 2014. (#4 at 14). At the time, Plaintiff was 55 years old. On October 3, 2014, the EEOC sent Plaintiff another right to sue letter in connection with her retaliation claim. (#4 at 11-12).

Plaintiff alleges that she was never late to or absent from work and had saved 600 hours of sick time. (#4 at 4). She also alleges that she never faced a disciplinary action before 2011. (#4 at 15). Because of the discrimination against her, she was afraid of permanent damages from not eating or sleeping and living in fear. (#4 at 6). When she was taken from work in an ambulance for a "[slight] heart attack," she was afraid of leaving work because she did not want to be without a job. (*Id.*) She was

in the hospital from March 19-23, 2012 "due to high blood pressure and getting sick on the job." (#4 at 16).

## II.      Procedural Background

Plaintiff filed a Motion for Leave to Proceed *in forma pauperis* in this action on December 29, 2014. (#1). The Motion was granted on January 8, 2015. (#3). The court conducted preliminary screening to ensure the claims were not frivolous, malicious, or failed to state a plausible claim. The court found Plaintiff's retaliation, age discrimination, and religious discrimination claims to be sufficiently pled. However, Plaintiff's race discrimination and disability discrimination claims were held to be deficient because neither claim was supported by sufficient factual allegations. Plaintiff was ordered to submit an amended complaint by January 23, 2015 if the deficiencies could be corrected, and was directed that the amended complaint would supersede the original Complaint. The original Complaint was filed with the court on January 8, 2015. (#4).

Plaintiff filed a Motion to Extend Time on January 20, 2015. (#5). Plaintiff stated that she had received documents from the court that she did not understand. (*Id.*)[2] The court issued an Order (#6) on January 22, 2015, setting a hearing on the Motion to Extend Time to take place on February 5, 2015. Plaintiff notified the court that she would be unable to attend this hearing because she was tending to an ill loved one in California. The hearing was rescheduled for April 2, 2015. (#10).

Plaintiff filed an Amended Complaint on January 22, 2015. (#7). Disregarding attachments, the Amended Complaint is identical to the original Complaint except that the eighth page of the original Complaint is omitted from the Amended Complaint. (#4 at 1-9; #7 at 1-8). Both forms list three counts of discrimination: race, age, and retaliation. (#4 at 4-6; #7 at 4-6). As part of the original Complaint,

---

[2] Though Plaintiff did not identify the document she received, the only document the court has issued was the Order (#3) granting Plaintiff's Motion to Proceed *in forma pauperis* and directing Plaintiff to submit an amended complaint by January 23, 2015.

4

Plaintiff attached forms she previously submitted to the Nevada Equal Rights Commission on March 17, 2014 that list five counts of discrimination: race, age, retaliation, religion, and disability. (#4 at 14-16). These forms were not attached to the Amended Complaint, which includes one attachment that was not attached to the original Complaint. (#7 at 11-12). The attachment re-alleges Plaintiff's race and lists qualifications for the job she held under Defendant. It also states that that Plaintiff "had to do duties the other [secretaries] did not have to do." (*Id.*)

Plaintiff filed a Motion to Seal on January 26, 2015. (#9). Plaintiff requests that the court seal "responses and confidential document[s]" to prevent her filing from being shown on the internet.

The court held a hearing on April 2, 2015. (#11).The court addressed Plaintiff's Amended Complaint (#7), Motion to Extend Time, (#5) and Motion to Seal (#9).

## DISCUSSION

I. <u>**Plaintiff's Amended Complaint**</u>

### A.    **Legal Standard**

After a court grants a plaintiff *in forma pauperis* status, it must review the operative complaint to determine whether it is frivolous, malicious, or fails to state a plausible claim. *See* 28 U.S.C. § 1915(e). This review is guided by two legal standards: Federal Rule of Civil Procedure 8 and the Supreme Court's decision in *Haines v. Kerner*, 404 U.S. 519, 520 (1972). If the factual allegation, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing FED. R. CIV. P. 8(a)(2)). However, where a *pro se* litigant is involved, courts are directed to hold the litigant to "less stringent standards." *See Haines*, 404 U.S. at 520; *Hughes v. Rowe*, 449 U.S. 5, 10 n. 7 (1980).

To state a prima facie case of race discrimination in violation of Title VII, the Plaintiff must allege: (1) she belonged to a protected class; (2) she was qualified for her job; (3) she was subjected to an adverse employment action; and (4) similarly situated employees not in her protected class received more favorable treatment. *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006) (citing *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818 (9th Cir. 2002)). "[T]o establish a prima facie case of discrimination under the ADA, a plaintiff must show that she: (1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of her disability." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001).

### B.   Whether Plaintiff's Amended Complaint Meets the Legal Standard

The Order granting the Motion for Leave to Proceed *in forma pauperis* found that the original Complaint contained "no indicia of racial discrimination." (#3 at 6: 9). The Amended Complaint must provide new facts relevant to the legal standard for this claim to survive. The Amended Complaint states that Plaintiff is African American, a protected class. (#7 at 11). The Amended Complaint also makes a showing that Plaintiff was qualified for her job by listing the job's duties and several steps Plaintiff took to fulfill her role, such as updating her "professional development with several classes." There is also an allegation of an adverse employment action, as Plaintiff claims she "had to do duties the other [secretaries] did not have to do."

The Amended Complaint makes virtually no showing beyond what was contained in the original Complaint with regards to how similarly situated employees outside her protected class received more favorable treatment. The Amended Complaint contains one sentence potentially relevant to this element: "I had to do duties the other [secretaries] did not have to do." (#7 at 11). However, it does not make any mention of whether any or all of the other secretaries were outside Plaintiff's protected class. None of the allegations of discrimination contained in the Amended Complaint are related to any racial bias.

Because Plaintiff failed to correct the deficiency from her original Complaint (#4) in her Amended Complaint (#7), the court recommends the race discrimination claim be dismissed with prejudice.

The Order granting the Motion for Leave to Proceed *in forma pauperis* found that the Plaintiff failed to allege that she was disabled in her original Complaint. (#3). In the Amended Complaint, Plaintiff again makes no mention of any disability. (#7). In fact, because the forms sent to the Nevada Equal Rights Commission (#4 at 14-16) were not attached to the Amended Complaint (#7), even the allegation of disability discrimination is absent from the Amended Complaint. Plaintiff was directed that the Amended Complaint would supersede the original Complaint in the court's previous Order. (#3). Because the Plaintiff failed to allege any disability or discrimination Amended Complaint (#7), the court recommends that the disability discrimination claim be dismissed with prejudice.

The Amended Complaint (#7) did not correct the deficiencies with regard to either claim the Order directed Plaintiff to supplement. In addition, Plaintiff attached several documents to the original Complaint that are crucial to the success of the two surviving claims (#4 at 14-16) and failed to attach these documents to the Amended Complaint. The age discrimination claim depends on Plaintiff's assertion that she is within the protected class and her replacement was not, contained in the forms submitted to the Nevada Equal Rights Commission. (#4 at 15-16). These forms are not included in the Amended Complaint. Plaintiff's religious discrimination claim is not listed as a count in the Amended Complaint. (#7 at 4-6). The count was only included in the forms submitted to the Nevada Equal Rights Commission, attached to the original Complaint. (#4 at 15).  Under Federal Rule of Civil Procedure 12(f), the court may strike redundant and immaterial matters from pleadings. The material in the Amended Complaint is either identical to that contained in the original Complaint or is irrelevant to the proceeding. For these reasons, the court recommends the Amended Complaint (#7) be stricken and the original Complaint (#4) remain in effect in this matter.

## II.   Plaintiff's Motion to Seal

### A.   Legal Standard

A "court may order that a filing be made under seal." Fed. R. Civ. P. 5.2(d). However, the public has a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597, (footnote omitted). "Unless a particular court record is one 'traditionally kept secret, a strong presumption in favor of access is the starting point." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (internal quotation marks omitted). The moving party bears the burden of overcoming this presumption for each document it seeks to have sealed. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135-36 (9th Cir. 2003).

The burden on the moving party depends on the type of document. To seal dispositive materials, a party "must articulate compelling reasons supported by specific factual findings" as to why their private interest outweighs the public policy favoring disclosure. *Kamakana*, 447 F.3d at 1178-1179 (internal quotation marks omitted). To seal non-dispositive materials, the party must satisfy the good cause standard under Federal Rule of Civil Procedure 26(c). *Id.* at 1180. The court must balance the competing interests of the public interest in understanding the judicial process and the party's interest in preventing material being used for improper purposes such as libel or releasing trade secrets. *Id.* at 1179.

### B.   Whether Plaintiff's Motion to Seal Meets the Legal Standard

The Plaintiff requests that the entire record be kept under seal. She asks that no details be available on the internet for "responses and confidential document[s]." (#9). While "response" is a term of art, if the Plaintiff is using the term in a legal sense, it makes no logical sense. Plaintiff would be asking to seal only the responses to motions, from both sides, and not the motions or replies. If "responses" is being used as a general term, it could apply to all filings in the case. While it is possible to move to seal all records of a proceeding in one motion, the moving party must satisfy the compelling

8

reasons standard. *Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014). "Confidential documents" is a vague category that gives the court no direction in what the Plaintiff is seeking. The Plaintiff may be using it in a legal or vernacular sense. In addition, assessing the confidentiality interest of a document is merely one step in a court's decision to grant or deny a motion to seal. *See Kamakana*, 446 F. 3d at 1180 (stating the court must balance the public's interest against the party's confidentiality interest).

Regardless of what documents Plaintiff meant to have sealed, the Plaintiff makes no showing of either good cause or compelling reasons why the Motion to Seal (#9) should be granted. The Plaintiff merely asks that no details of the case be available online. It would be difficult for the Plaintiff to make a showing of good cause or compelling reasons, because the Motion to Seal (#9) applies to documents that are not in existence at this time. Because the Plaintiff has made no showing for how sealing the record is appropriate in this case, the court orders the Motion to Seal (#9) is denied.

## III.   Plaintiff's Motion to Extend Time

Plaintiff was directed to submit an amended complaint by January 23, 2015. (#3). Plaintiff made a Motion to Extend Time on January 20, 2015. (#5). Plaintiff filed an Amended Complaint on January 22, 2015. (#7). The Amended Complaint was timely filed. Therefore, the Motion to Extend Time (#5) is denied as moot.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Plaintiff's race discrimination and disability discrimination claims be DISMISSED with prejudice.

IT IS FURTHER RECOMMENDED that Plaintiff's Amended Complaint (#7) be STRICKEN and the original Complaint (#4) remain in effect.

IT IS ORDERED that Plaintiff serve summons on Defendant within 60 days after Judge Dorsey rules on this Report and Recommendation.

IT IS FURTHER ORDERED that Plaintiff's Motion to Seal (#9) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Extension of Time is DENIED as moot.

### **NOTICE**

Pursuant to Local Rules IB 3-1 and IB 3-2, a party may object to orders and reports and recommendations issued by the magistrate judge. Objections must be in writing and filed with the Clerk of the Court within fourteen days. LR IB 3-1, 3-2. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

Pursuant to Local Special Rule 2-2, the Plaintiff must immediately file written notification with the court of any change of address. The notification must include proof of service upon each opposing party of the party's attorney. **Failure to comply with this Rule may result in dismissal of the action**. *See* LSR 2-2.

DATED this 10th day of April, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE